UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD GLEN KENNER,

      Plaintiff,

v.

OFFICER PATRICK BARNARD and
SHELBY TOWNSHIP,

      Defendants.
_____/

Case No. 04-73317
Hon. Victoria A. Roberts

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This matter is before the Court on Defendants' Motion for summary judgment. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion and **DISMISSES** Defendant Shelby Township.

**II.   BACKGROUND**

This case arises out of the arrest of the Plaintiff, Donald Kenner, for suspected assault. The Plaintiff was arrested by Defendant, Officer Patrick Barnard ("Barnard"). Barnard is a Shelby Township police officer. Shelby Township is also named as a Defendant.

On October 24, 2002, Barnard arrested the Plaintiff for allegedly verbally assaulting his neighbor, 74 year old Irene Hachey ("Hachey"). The Plaintiff was moving out of his apartment when Hachey approached him. Hachey was the apartment manager. She was concerned about her new car because the Plaintiff was backing up

1

a moving truck. Hachey claims the Plaintiff moved towards her with his fists balled and told her if she was a man he would "punch her lights out." Hachey reportedly ran inside her apartment and called the police. The Plaintiff denies he made any threats to Hachey.

Barnard was dispatched to the apartment. According to Barnard, he talked with Hachey who appeared "shaken up" and upset. He then approached the Plaintiff in the parking lot. The Plaintiff disputes whether Barnard talked to Hachey before arresting him.

The Plaintiff was not cooperative with Barnard. He and the Plaintiff had "bad blood" from an earlier traffic violation stop. While Barnard spoke to the Plaintiff, the Plaintiff reached towards his waistband to pull something out. Barnard pinned his arm and handcuffed him. The Plaintiff claims he was reaching for a cell phone.

The Plaintiff contends he and his son, Danny, told Barnard that the Plaintiff did not make any threats toward Hachey. Nonetheless, Barnard arrested the Plaintiff for assault. The Plaintiff was taken to the Shelby Township Police Department.

The Plaintiff, a Native American, claims he was subjected to racial epithets and assaulted while in the booking area. He says Barnard pulled his head back by his hair and slapped him in the face. He also claims Barnard raised his handcuffed hands above his head in a painful manner. While there is a video camera in the booking room, the Defendants claim they do not have a tape of this incident. It is unclear whether there ever was a tape or if it was subsequently erased. The Plaintiff also claims his brother videotaped the incident at the apartment and that this tape was given to Lieutenant Woelkers as part of the investigation. However, there is no record of

Woelkers receiving the tape or of the Plaintiff leaving it with the police.

The Plaintiff was charged with assault and disorderly conduct. A jury trial commenced on October 21, 2003. He was acquitted.

On August 25, 2004, the Plaintiff filed a complaint against the Defendants, alleging false arrest, excessive force, equal protection violations and malicious prosecution. The Defendants filed a motion for summary judgment on all counts on September 7, 2005. The Defendants deny the allegations; assert qualified immunity for Barnard on the false arrest claim; and, argue a claim was not established against Shelby Township because no custom or policy was identified.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine

3

issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

**IV.   APPLICABLE LAW AND ANALYSIS**

    **A.   False Arrest**

The Plaintiff claims he was falsely arrested by Barnard because Barnard did not have probable cause to arrest him for the assault on Hachey.

"In order for a wrongful arrest claim to succeed under §1983, a plaintiff must prove that the police lacked probable cause. A police officer has probable cause if

there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003).

The Plaintiff claims Barnard did not have probable cause to arrest him because the only information he had to go on at the time of the arrest is the information given by the dispatcher. The Plaintiff claims Barnard did not get a statement from Hachey until after he was arrested. Under Michigan law, Barnard could arrest the Plaintiff without a warrant because the offense was punishable by imprisonment for more than 92 days. *See* MCL §764.15 and MCL §750.81.

Hachey's testimony is unclear on when Barnard initially talked to her. Hachey testified that the first time she saw the police she was handling a delivery driver, which was part of her duties as apartment manager. [Trial Transcript, p. 61]. Hachey could not say for sure if officers had already talked to the Plaintiff when she first saw them. *Id*. at 62. She claims she was walking in the direction of the officers when she spotted them, but she could not recall if they questioned her at that time. *Id*. Hachey testified that after taking care of the delivery driver, she went back to her apartment. She said officers came to talk to her in her apartment after they arrested the Plaintiff. She testified that officers took her written statement and told her he was arrested. *Id*. at 77. However, it was unclear if officers spoke to her before that.

Barnard testified that he spoke with Hachey before he approached the Plaintiff. Barnard said he arrived about five minutes after the dispatch call. He claimed that when he arrived Hachey was in her apartment. Barnard testified that he took a statement from Hachey, although it is unclear if it was written or oral. [Trial Transcript, p. 85]. He says Hachey was visibly shaken and upset. *Id*. Barnard also testified that at that time

5

Hachey told him how the Plaintiff threatened her. *Id.* at 85-86. After getting a statement from Hachey, Barnard claims he approached the Plaintiff to get his side of the story. *Id.* at 86.

The Plaintiff testified during deposition, when asked whether Barnard spoke with Hachey prior to speaking with him, that although he could not answer definitively, based on Hachey's positioning when the Plaintiff saw her, Barnard could not have spoken with her first. [Defendants' Motion, Exhibit 1, pp. 15-16]. He drew a diagram showing the direction from which the officers arrived and the direction Hachey was heading. This diagram, however, was not included with the motion papers. The Plaintiff claimed Hachey had just let in a delivery driver and was headed back to her apartment. He claims that at the time he saw the officers approaching, Hachey was walking through a courtyard and the officers were coming from an area next to her apartment building. *Id.* at 19-20.

Based on the varied accounts of the sequence of events surrounding the Plaintiff's arrest, and viewing the facts in the light most favorable to the Plaintiff, there is a genuine issue of material fact on whether Barnard had probable cause to arrest the Plaintiff. "[P]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005). Without talking to Hachey, Barnard had only reasonable suspicion based on the dispatch information to question the Plaintiff about the alleged assault. *See Feathers*, 319 F.3d at 850. And, if Barnard did not talk to Hachey before arresting the Plaintiff, there is nothing in the record to support a finding of probable cause for the arrest. All Barnard would have had to go on at that

point was the second-hand information received from the dispatcher which, without any further investigation, was unsubstantiated.[1]  Both the Plaintiff and his son denied that the Plaintiff made any threats.  No other individuals were questioned.  The Defendants' do not direct the Court to any other information relied on in arresting the Plaintiff.  Barnard testified that he made the decision to arrest the Plaintiff when he continued to be uncooperative.[2] [Trial Transcript, pp. 92-93].  Summary judgment is inappropriate on this claim.

The inquiry does not end here.  Barnard asserted qualified immunity to the Plaintiff's false arrest claim in his motion for summary judgment.  "Qualified immunity is an affirmative defense whereby state officials performing discretionary functions are shielded from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).  "When this defense is interposed, it becomes the plaintiff's burden to prove that the state officials are not entitled to qualified immunity."  *Id*. (*citing Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

There is a two pronged analysis to determine the merit of a qualified immunity defense: (1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly

---

[1] Neither party provides documentation of what information was relayed by the dispatcher to Barnard.

[2] Probable cause may be established from the collective knowledge of officers on the scene and in communication with each other.  *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989).  However, there is no evidence to support that argument and it is not raised here.

7

established.[3] *Myers*, 422 F.3d at 352. However, where facts must be determined before a constitutional violation can be established, the question of immunity cannot be determined.

Plaintiff alleges a constitutional violation - arrest without probable cause, in violation of the Fourth Amendment. The Plaintiff alleges Barnard did not do any investigation before arresting him and only talked to Hachey after he was arrested.

"[T]he law [is] clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Radvansky*, 395 F.3d at 310. It was clearly established at the time Plaintiff was arrested that Barnard could not arrest the Plaintiff without probable cause. However, whether Barnard did or did not have probable cause remains in dispute. Until the fact-finder resolves this question, the Court cannot make a determination on qualified immunity.

### B. Excessive Force

The Plaintiff claims he was subject to excessive force based on the alleged raising of his handcuffed hands and the slap in the booking room. The Defendants claim the handcuff allegations and the assault at the jail were not pled in the Complaint, and that the Plaintiff cannot maintain a claim because he failed to allege any actual injury.

The Plaintiff pled excessive force for the handcuff incident in his Complaint. The

---

[3] Some courts add a third step to determine if the violation was objectively reasonable, but "the fact that a right is clearly established sufficiently implies that its violation is objectively unreasonable." *Myers*, 422 F.3d at 352.

Plaintiff claimed he was assaulted at the time of his arrest and after being handcuffed. [Complaint, ¶6]. The Plaintiff claims Barnard "without any lawful justification...began to push Plaintiff's handcuffed hands into the air pulling on the cuffs and causing extreme pain to Plaintiff using excessive and unreasonable force." [Complaint, ¶24]. He alleges Barnard used excessive force and unreasonable force after transporting him to the police station. *Id.* at ¶7.

It is true that the Plaintiff did not make an allegation in his Complaint that he was slapped by Barnard, or anyone else, at the police station. And, when questioned at the criminal trial as to what happened at the police station, the Plaintiff did not allege he was slapped. However, he did reference being "manhandled," claiming Barnard pulled his hands up behind his back and tried to lift him off the ground. [Defendants' Motion, Exhibit 2, pp. 178-179].

The Plaintiff first alleged the slapping incident in his deposition testimony. [Kenner Deposition, p. 64]. He alleges Barnard "grabbed my hair from the back of my head, ripped my head back, ripping out my hair, and slapped me across the mouth with his open hand." [Kenner Deposition, p. 64]. The Plaintiff claims these applications of force were gratuitous.

Thus, while the alleged jail assault was not pled specifically in the Complaint, the Plaintiff did allege excessive force after being transported to jail and testified that this included slapping.

In its motion on this claim, the Defendants focused on the initial handcuffing of the Plaintiff, to which the Plaintiff does not object. Therefore, the Court finds that the Defendants have not properly moved for judgment as a matter of law on this claim.

9

Additionally, the Defendant does not argue he is entitled to qualified immunity on the excessive force claim.

### C. Malicious Prosecution

The Plaintiff alleged malicious prosecution in his Complaint but failed to defend against the motion for summary judgment. It is unclear from the Complaint if the Plaintiff is alleging malicious prosecution under state or federal law. *See* Complaint, ¶17.

#### 1. Malicious prosecution under Michigan law

"To establish a prima facie claim of malicious prosecution under Michigan law, a plaintiff must show: (1) that a criminal prosecution was instituted against plaintiff by defendant and was terminated in plaintiff's favor; (2) absence of probable cause; and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice." *Adams v. Metiva*, 31 F.3d 375, 388 (6th Cir. 1994).

The Plaintiff failed to allege malice or a purpose in bringing the action other than to bring him to justice. He alleged what Barnard did but not why he did it. Therefore, he failed to state a claim for malicious prosecution under Michigan law and the Defendants are entitled to dismissal of this claim.

#### 2. Malicious prosecution under federal law

"A claim of malicious prosecution is actionable under §1983 where all elements of the state law tort are present and probable cause was lacking as defined by Fourth Amendment jurisprudence." *Akers v. Bishop*, 2003 WL 21019171 (6th Cir. 2003); *see also Garrett v. Fisher Titus Hospital*, 318 F.Supp.2d 562, 572 (N.D. Ohio 2004). As

discussed above, the Plaintiff failed to establish the elements of malicious prosecution claim under Michigan law. Therefore, dismissal of this claim is proper.

### D.     Equal Protection

The Plaintiff claims his Fourteenth Amendment equal protection rights were violated when he was allegedly subjected to racial epithets by Barnard. [Complaint, ¶¶ 22-24, ¶ 27]. The Defendants deny Barnard made any such statements. They also argue that racial epithets alone do not establish an equal protection violation. The Plaintiff failed to defend against this claim.

In order to allege a violation of the equal protection clause, the plaintiff has the burden to prove the existence of purposeful discrimination. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). The plaintiff must prove that the alleged violators acted with a discriminatory purpose. *Id.* The Plaintiff failed to demonstrate that he was discriminated against or that the Defendants intended to discriminate. Therefore, the Defendants are entitled to summary judgment on this claim.

### E.     Municipal Liability

In this Rule 56 motion, the Defendants argue that the Plaintiff failed to state a claim against Shelby Township because Plaintiff failed to identify a custom, policy or procedure by which any constitutional violation could be attributed to the township, and that he did not establish that the city was responsible for the violation.

A municipality can be held liable under §1983 for constitutional violations directly attributable to it, but, the municipality is not vicariously liable for the constitutional torts of its employees. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). To state a §1983 claim against a municipality, the plaintiff must show that his injury was

caused by an unconstitutional policy or custom. *Id.* If the identified policy or custom is facially lawful, the plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Id.*

The Plaintiff alleged a "code of silence" among Shelby Township officers; he contends they are not willing to come forward and implicate fellow officers in wrongdoing. The Plaintiff contends that because of this custom, fellow officers "stood by" while Barnard committed constitutional violations. The Plaintiff further alleged Shelby Township is aware of the code of silence and is deliberately indifferent to it.

Assuming arguendo that the alleged "code of silence" is a custom or policy, the Plaintiff did not allege that Shelby Township was aware that the alleged "code of silence" resulted in constitutional violations. Additionally, in Plaintiff's response brief, the Plaintiff argued that Shelby Township had a policy that VCR tapes recorded at the police station be preserved, that its officers did not follow the policy, and that Shelby Township made the deliberate choice not to take any action. This allegation is wholly different from the one in the Complaint, but, similarly does not state a claim for municipal liability under §1983. Therefore, Shelby Township is dismissed from this action.

**V.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for summary judgment. The Court:

(1) **DISMISSES** Shelby Township;

(2) **DENIES** summary judgment on the false arrest claim;

(3) **DENIES** summary judgment on the excessive force claim;

(4) **GRANTS** summary judgment on the malicious prosecution claim under federal law;

(5) **GRANTS** summary judgment on the claim of malicious prosecution under Michigan law; and

(6) **GRANTS** summary judgment on the claim of violation of equal protection.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
**Victoria A. Roberts**
**United States District Judge**

**Dated: January 31, 2006**

| |
|---|
| **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 31, 2006.**<br><br>**s/Linda Vertriest**<br>**Deputy Clerk** |